UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

THOMAS J. CREAN and SUSAN CREAN,

       Plaintiffs,

  -v-                                                                          No.  15CV3814-LTS-HBP

125 WEST 76TH STREET REALTY CORP.
et al.,

       Defendants.

-------------------------------------------------------x

MEMORANDUM OPINION AND ORDER

       Pro se plaintiffs Thomas J. Crean ("TC") and Susan Crean ("SC" and, together with TC, "Plaintiffs") commenced this action against Defendants 125 W. 76 Realty Corp.[1] (the "Co-op") and Alyson Reim Friedman ("Friedman" and, together with the Co-op, "Defendants"), seeking damages pursuant to Title VII of the Civil Rights Act ("Title VII"), the Age Discrimination in Employment Act (the "ADEA"), Americans with Disabilities Act of 1990 (the "ADA"), New York State Human Rights Law ("NYSHRL"), and New York City Human Rights Law ("NYCHRL") for alleged employment discrimination.

       On October 5, 2015, Defendants filed a motion, which was accompanied by a number of declarations and evidentiary submissions, to dismiss the Complaint. On October 8, 2015, the Court issued an order converting the motion into one for summary judgment based on Defendants' reliance on materials outside the Complaint, and directed the parties to file

---

[1]    Plaintiffs refer to this Defendant as 125 West 76th Street Realty Corp. in their Complaint.

statements pursuant to Local Rule 56.1 and evidentiary submissions with their argumentative briefing. (Docket entry no. 20.) The parties have done so, and Plaintiffs also filed a number of additional submissions.

The Court has subject matter jurisdiction of the case pursuant to 28 U.S.C. §§ 1331 and 1367.

The Court has reviewed the parties' submissions carefully. For the following reasons, Defendants' motion for summary judgment is granted.

BACKGROUND

Except as otherwise noted, the following facts are undisputed.[2] The Co-op is an entity that owns a single, residential cooperative apartment building (the "Building") located at 125 West 76th Street, New York, New York. (Defs.' 56.1 ¶ 1.) Defendant Friedman was, at all relevant times, the President of the Co-op. (Id. ¶ 4.)

The Co-op employed TC as the superintendent of the Building from 2001 to 2014. (Id. ¶ 5.) SC is TC's wife. (Id. ¶ 6.) Defendants never considered SC to be an employee of the Co-op. (See id. ¶ 7.) Plaintiffs allege that, beginning at the time TC was originally hired, he was directed to submit certain reports to the Building's management by email, and that the manager told him to have SC type the reports if TC was unable to type the reports. (See Pls.' Resp. 56.1 at 8-9.) SC alleges that she typed all of the reports over the years of TC's employment and asserts that, by virtue of that work, she was a "'Quasi-Constructive'

---

[2] The facts recited are drawn primarily from the parties' statements pursuant to S.D.N.Y. Local Civil Rule 56.1, or from evidence as to which there is no non-conclusory factual proffer. Citations to Defendants' Local Civil Rule 56.1 Statement ("Defs.' 56.1," docket entry no. 23) and Plaintiffs' statement in opposition ("Pls.' Resp. 56.1," docket entry no. 35-1 at ECF p. 28) incorporate by reference the parties' citations to the underlying evidentiary submissions.

uncompensated employee" of the Co-op.  (See id.)  SC was never compensated for such work, and SC's handwritten note on an EEOC document attached to the Complaint states "I am Not an Employee of Defendant & Never Was Susan Crean."  (Compl. at ECF p. 13; see also Pls.' Resp. 56.1 at 8.)  The Co-op terminated TC's employment on November 5, 2014.  (Defs.' 56.1 ¶ 8.)

Defendants have proffered a declaration that the Co-op never had more than three employees in 2014 or 2015; tax documentation consistent with that representation is attached to the declaration.  (Elgar Decl. Ex. 1.)  Plaintiffs assert that "[t]he Corporation IS a 'MULTI-EMPLOYER' with at least, 20 or more 'contracted' and 'sub-contracted' employees rotated on a REGULAR Full-time, Part-time (or at-will) basis.  They are employees whether, or not, they have been in IRS classified status: 'exempt' or "'non-exempt.'  All these are regular contracted employees that are (and have been) retained by the Corporation for many years."  (Pls. Resp. 56.1 at 2.)  In this connection, Plaintiffs assert that the Co-op's management company and each member of the management company's staff is an employee of the Co-op because the Co-op pays the management company an annual "Administrative fee."  (Id. at 2-3.)  Plaintiffs also assert that the elevator maintenance company, and roofers, painters, an exterminator, contractors and their sub-contractors who are "under contract" to service the Building regularly are "regularly contracted employees" of the Co-op.  (Pls. Mem. of Law at ECF pp. 6-7.)

On November 7, 2014, Local 32BJ, Service Employees International Union (the "Union") filed a request to arbitrate the termination of TC's employment (the "Arbitration"). (Defs.' 56.1 ¶ 9.)  The Union, on behalf of TC, claimed that his termination was arbitrary, in violation of the Collective Bargaining Agreement ("CBA").  Both parties were represented by attorneys and were given a full opportunity to offer testimony, present evidence, examine and cross-examine witnesses at the hearing held.  (See "Arbitration Op.," Margolis Decl. Ex. D at 3.) The Co-op claimed that TC had been terminated for combative and un-cooperative behavior,

including making an unfounded safety complaint to the New York City Department of Environmental Protection that resulted in the shutoff of services to the Building.  (Id. at 4-6.) The Union, on behalf of TC, claimed principally that TC was arbitrarily and unjustly discharged, did not fail to cooperate with the Co-op, and was terminated because he refused to work in the basement due to a threat to his health and safety.  (Id. at 6.)  TC testified personally, denying the Co-op's accusations and alleging that management had thwarted his ability to perform his job. (Id. at 11.)  The Arbitrator found that:

> [i]t is clear from the testimony of the witnesses as well as the e-mails and threatening notes from the Grievant [(TC)] that he was having problem cooperating with management . . . . The Grievant, admittedly a good worker until approximately two years prior to his termination, apparently had a change of attitude that altered his behavior toward his Employer.  In the last two years, in particular the last year, there were a number of incidents which reflected his attitude that only he knew what was best for the building . . . . Based on the evidence submitted, as well as the testimony of both the Employer witnesses and the Grievant, I find that the Employer did not violate the Agreement when it terminated the Grievant.

(Id. at 11-13.)  The Arbitrator further found that "although the attacks by [Plaintiffs] were particularly nasty and threatening," TC was not trying to provoke his own dismissal and therefore was entitled under the CBA to eleven weeks' severance pay.  (Id. at 13.)

On or about the same date that the Union filed its request to arbitrate TC's dismissal, TC filed a "Whistleblower Complaint" against Defendants with the Occupational Safety and Health Administration ("OSHA").  (Defs.' 56.1 ¶ 10.)  On December 30, 2014, Plaintiffs filed notices of charges of discrimination under Title VII, the ADA, and the ADEA, against Defendants, with the Equal Employment Opportunity Commission ("EEOC").  (Id. ¶ 11.) By Notice of Dismissal dated February 24, 2016, the EEOC informed Plaintiffs that it was unable to conclude that the information they had provided established a violation of the anti-discrimination laws.  (Margolis Decl. Ex. A; Compl. at ECF p. 7.)  OSHA dismissed the

Whistleblower Complaint on May 29, 2015.  (Margolis Decl. Ex. F.)

DISCUSSION

Summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Material facts are those that "might affect the outcome of the suit under the governing law," and there is a genuine dispute where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks and citation omitted).  The Court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor."  Dickerson v. Napolitano, 604 F.3d 732, 740 (2d Cir. 2010) (citation omitted).

SC's Claims

Defendants move to dismiss SC's claims for lack of subject matter jurisdiction, arguing that she has no standing to bring any of the claims because she was never employed by Defendants.

It goes almost without saying that there can be no viable claim of employment discrimination (other than one relating to a refusal to hire) absent the existence of an employment relationship.  Title VII, the ADEA, and the ADA define an "employee" as "an individual employed by an employer."  42 U.S.C. § 2000e(f) (Title VII); 28 U.S.C. § 630(f) (ADEA); 42 U.S.C. § 12111(4) (ADA).  Both the NYSHRL and NYCHRL prohibit an employer from discharging from employment or discriminating against a "person" in compensation or in the terms, conditions, or privileges of employment.  N.Y. Exec. Law § 296(1); N.Y.C. Admin. §

8-107.  It is well established in this Circuit that, for Title VII purposes, being hired and compensated by the putative employer are essential conditions to the existence of an employer-employee relationship.  See O'Connor v. Davis, 126 F.3d 112, 115-16 (2d Cir. 1997); see also Reed v. A.W. Lawrence & Co., Inc., 95 F.3d 1170, 1177 (2d Cir. 1996) (NYSHRL relies on federal standards); Wang v. Phoenix Satellite Television U.S., Inc., 976 F. Supp. 2d 527, 532 (S.D.N.Y. 2013) (NYCHRL does not extend protection to unpaid positions).  Here, it is undisputed that SC was never compensated by the Co-op for any services, nor is there any other evidence that SC was ever hired by Defendants.  Accordingly, because SC was never an employee for the purposes of any of the federal or state law causes of action and thus is not eligible to assert her statutory claims, SC's claims are dismissed in their entirety.  The remainder of the opinion will address TC's claims.

TC's Claims

Title VII, the ADEA, and the ADA define "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the year."  42 U.S.C. § 2000e(b); 29 U.S.C. § 630(b); 42 U.S.C. § 2322(5)(A).  NYSHRL and NYCHRL provide that an "employer" must have four or more persons in its employ.  N.Y. Exec. Law § 292(5); N.Y.C. Admin. Code § 8-102(5).  Defendants have proffered evidence that they did not have more than three employees in 2014 or 2015, and also argue that they are not engaged in an industry affecting commerce because the Co-op only owns a single cooperative apartment building.  Although Defendants operate within the large New York City real estate market and hire contractors and employees from the general labor market, all of which affect interstate commerce, Plaintiffs have failed to frame any genuine factual dispute as to whether the Co-op was a qualifying "employer" within the meaning of the

statutes under which they assert their claims. Plaintiffs proffer only conclusory assertions that employees of a management company that was contracted to provide services to the Co-op, and others who performed various particularized tasks "under contract" with the Co-op from time to time, directly or as employees or subcontractors of other entities, were employees of the Co-op in some general sense. In light of the evidence submitted by Defendants as to the relevant employee census and Plaintiffs' admission that TC and a part-time porter were the only "weekly (compensated) wage earners under contract with the Corporation" (Pls. Mem. of Law at ECF p. 5), Plaintiffs' assertions regarding the employment status of other individuals and entities are insufficient to raise a genuine factual dispute as to whether the Co-op employed fewer than four individuals at any relevant time. Defendants are thus entitled as a matter of law to judgment dismissing TC's federal, New York state and city claims against the Co-op. Since Plaintiffs merely assert that Friedman was an employer by virtue of her authority as President of the Co-op, the claims against her must be dismissed as well.

To the extent that TC is attempting to amend his complaint in his opposition to Defendants' summary judgment motion to add an additional claim under Sarbanes-Oxley (see Pls. Mem. of Law at 2), that request is denied, inter alia, as futile since Sarbanes-Oxley's whistleblower provisions apply only to public companies. See Leshinsky v. Televant GIT, S.A., 942 F. Supp. 2d 432, 440 (S.D.N.Y. 2013). The Court has considered the parties' remaining arguments; in light of the dismissal of Plaintiffs' claims for the reasons described above, it is unnecessary to reach Defendants' remaining contentions.

## CONCLUSION

Defendants' motion for summary judgment is granted in its entirety. The Clerk of the Court is respectfully requested to enter judgment in favor of Defendants and close the

case.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith. Accordingly, any application to proceed on appeal in forma pauperis is denied. See Coppedge v. United States, 369 U.S. 438, 444 (1962).

This Memorandum Order and Opinion resolves docket entry number 11.

SO ORDERED.

Dated: New York, New York
January 17, 2017

 /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge

A copy of this order has been mailed to:

Thomas J. and Susan Crean
101 Middlefield Ave.
Waterbury, CT 06705